Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 S.W. Birch St., Suite 200
Newport Beach, CA 92660
Office: (949) 200-8755
DisabilityRights@manninglawoffice.com

Attorney for Plaintiff: JAMES RUTHERFORD

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EL TORO MARKET, a business of unknown form; BILAL-J, a California corporation; and DOES 1-10, inclusive,<br><br>Defendants. | **Case No**. 3:18-cv-02037-BTM-KSC<br><br>**First Amended Complaint For Damages And Injunctive Relief For:**<br><br>1. **VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181** *et seq.*<br><br>2. **VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq.* |

Plaintiff, James Rutherford ("Plaintiff"), complains of Defendants El Toro Market, a business of unknown form; Bilal-J, Inc., a California corporation; JALAL RAHMAN, an individual; THE FALLBROOK WOMAN'S CLUB, a California corporation; and DOES 1-10 ("Defendants") and alleges as follows:

**PARTIES**

1. Plaintiff is an adult California resident. Plaintiff is substantially limited

in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning, and grasping objects.  As a result of these disabilities, Plaintiff relies upon mobility devices, including at times a wheelchair, to ambulate.  With such disabilities, Plaintiff qualifies as a member of a protected class under the Americans with Disabilities Act, 42 U.S.C. §12102(2) as amended by the ADA Amendments Act of 2008 (P.L. 110-325) ("ADA") and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq.  At the time of Plaintiff's visits to Defendant's facility and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA, including those set forth in this paragraph.  Plaintiff is also the holder of a Disabled Person Parking Placard.

2.     Plaintiff is informed and believes and thereon alleges that Defendants JALAL RAHMAN, an individual; and THE FALLBROOK WOMAN'S CLUB, a California corporation, owned the property located at 337 N. Main Ave., Fallbrook, CA 92028 ("Property") on June 19, 2018 and August 16, 2018.

3.     Plaintiff is informed and believes and thereon alleges that Defendants JALAL RAHMAN, an individual; and THE FALLBROOK WOMAN'S CLUB, a California corporation, own the Property currently.

4.     Plaintiff is informed and believes and thereon alleges that Defendants El Toro Market, a business of unknown form; and BILAL-J INC., a California corporation, owned, operated and controlled the business of El Toro Market ("Business") on June 19, 2018 and August 16, 2018.

5.     Plaintiff is informed and believes and thereon alleges that Defendants El Toro Market, a business of unknown form; and BILAL-J INC., a California corporation, own, operate and control the Business currently.

6.     Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the Property and Business, or their relative responsibilities in causing the access violations herein complained of, and alleges a

joint venture and common enterprise by all such Defendants.  Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief.  Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA.

8. This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's Unruh Civil Rights Act, California Civil Code § 51 *et seq.*, ("UCRA") claims are so related to Plaintiff's federal ADA claims in that they have the same nucleus of operative facts and arising out of the same transactions, they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this court pursuant to 28 U.S.C. §1391 because the real property which is the subject of this action is located in this district and because Plaintiff's causes of action arose in this district.

## FACTUAL ALLEGATIONS

10. Plaintiff went to the Business on or about June 19, 2018 and August 16, 2018 for the dual purpose of purchasing produce and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning federal and state law.

11. The Business, including the Property, is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are some of the facilities, privileges and advantages reserved by Defendants to persons at the Property serving the Business.

13. Unfortunately, although parking spaces were some of the facilities

reserved for patrons, there were no designated parking spaces available for persons with disabilities that complied with the 2010 Americans with Disability Act Accessibility Guidelines ("ADAAG") on or around June 19, 2018 and August 16, 2018.

14.     At that time, instead of having architectural barrier free facilities for patrons with disabilities, Defendants have: there is no accessible or van accessible parking signage in violation of Section 502.6; a curb ramp at the accessible parking space projects into the access aisle in violation of Section 406.5. Curb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles. Curb ramps at marked crossings shall be wholly contained within the markings, excluding any flared sides; an accessible access aisle with a slope and a cross slope both exceeding 4% where a maximum of 2% is allowed per Section 502.4; floor and ground surfaces shall be stable, firm, and slip resistant per Section 302.  This access aisle appears to have become weathered, worn, and cracked; access aisle markings are faded, worn, and nearly unrecognizable in violation of Section 502.3.3 which requires that access aisles shall be marked so as to discourage parking in them; a paper seat cover dispenser within the required 12 inch (305 mm) range between the grab bar and projecting objects above in violation of Section 609.3; a clearance around the water closet that is less than the 60 inch minimum perpendicular from the side wall and 56 inch minimum measured perpendicular from the rear wall in violation of  Section 604.3.1; a large machine placed in the turning space in violation of Section 304; a sales and service counter that exceeds 36 inches in height in violation of Section 904.4.1.

15.     On June 29, 2019, a Certified Access Specialist ("CASp") inspected the Property and identified the following barriers at the Business and Property[1]: the van accessible space at the main entrance did not have van accessible signage (Section

---

[1] See attached as Exhibit 3 the "CASp Inspection" prepared for the Property by Kenneth Arrington, dated June 29, 2019.

4
FIRST AMENDED COMPLAINT

502.6); the van accessible space at the main entrance contained uneven surfaces with slopes measuring between 4.5% and 7.0% (Section 502.4); the van accessible space at the main entrance contained a built-up curb ramp with slopes that exceed 2.08% and measured between 5.2% and 9.1% (Section 502.4); the van accessible space at the main entrance contained an access aisle hatching that measured as much as 37 ½" on center (Section 502.3.3); the standard accessible space at the south side of the parking lot contained uneven surfaces measuring between 2.4% and 4.5% (Section 502.4); the standard accessible space at the south side of the parking lot contained slope in the accessible aisle measuring as high as 3.8%, exceeding 2.08% (Section 502.4); the standard accessible space at the northwest entrance contained uneven surfaces measuring between 5.0% and 7.4% (Section 502.4); the standard accessible space at the northwest entrance contained a built-up curb ramp with slopes that exceed 2.08% and measured between 7.5% and 10.4% (Section 502.4); the curb ramp leading from the standard accessible parking space at the northwest entrance to the Business contained a top landing slope of 2.6% (Section 405.7.1); the curb ramp leading from the standard accessible parking space at the northwest entrance to the Business contained an opening that measured ¾" wide (Section 302.3); the accessible route leading from the curb ramp to the main entrance contained an abrupt change in level along the accessible route which measured as high as 1" (Section 403.4; 303.1; 303.2; 303.3); the accessible route from the public right of way contained a ramp that did not provide handrails (Section 505.2; 405.8); the accessible route from the public right of way contained ramp slopes measuring as high as 9.9% (Section 405.2); the ramp from the city sidewalk to the outdoor dining area contained cross slopes measuring as high as 5.8% (Section 405.3); the ramp from the city sidewalk to the outdoor dining area did not provide handrails (Section 505.2; 405.8); the service counter at the outdoor dining area measured 42" AFF, exceeding the 34" AFF maximum (Section 904.4; 904.4.1; 305.3; 305.5); the outdoor dining tables measured 14 ½" deep from the center pedestal, which is less

than the 19" minimum depth at 27" AFF required (Section 902.2; 306.3); the public restroom contained hardware that cannot be grasped easily with one hand; or requires tight grasping, pinching, or twisting of the wrist to operate (Section 404.2.7; 309.4); the water closet centerline measured 23 ½" to the wall (Section 604.2); the public restroom contained a side grab bar that measured 44 ¼" from the rear wall, which is less than the 54" minimum required. (Section 604.5.1); the rear grab bar in the public restroom extends 21" from the centerline of the water closet on the narrow side, and extends only 16" from centerline on the wide side, which does not meet the minimum required when one side of the grab bar is less than 24" (Section 604.5.2); the seat cover dispenser in the public restroom is mounted higher than 40" AFF (Section 309.3; 308.2.1; 308.2.2); the lavatory in the public restroom has no knee clearance as it is obstructed by a base cabinet preventing a forward approach (Section 606.2; 306.3); the lavatory faucet controls in the public restroom require tight grasping, pinching, or twisting to operate (Section 404.2.7; 309.4); and the mirror in the public restroom measured 54" AFF, exceeding the 40" maximum (Section 503.3).

16. Plaintiff is informed and believes and thereon alleges that Defendants had no policy or plan in place to make sure that there was compliant accessible parking reserved for persons with disabilities prior to June 19, 2018 and August 16, 2018.

17. Plaintiff is informed and believes and thereon alleges Defendants have no policy or plan in place to make sure that the designated disabled parking for persons with disabilities comport with the ADAAG.

18. Plaintiff personally encountered these barriers. The presence of these barriers related to Plaintiff's disability denies Plaintiff his right to enjoy accessible conditions at public places of accommodation and invades legally cognizable interests created the ADA.

19. The conditions identified *supra* in paragraph 14 are necessarily related

to Plaintiff's legally recognized disability in that Plaintiff is substantially limited in the major life activities of walking, standing, ambulating, sitting, in addition to twisting, turning and grasping objects; Plaintiff is the holder of a disabled parking placard; and because the enumerated conditions relate to the use of the accessible parking, relate to the slope and condition of the accessible parking and accessible path to the accessible entrance, relate to the use of the accessible restroom, and relate to the use of the outdoor dining area.

20. As an individual with a mobility disability who at times relies upon a wheelchair or other mobility devices, Plaintiff has a keen interest in whether public accommodations have architectural barriers that impede full accessibility to those accommodations by individuals with mobility impairments.

21. Plaintiff is being deterred from patronizing the Business and its accommodations on particular occasions, but intends to return to the Business for the dual purpose of availing himself of the goods and services offered to the public and to ensure that the Business ceases evading its responsibilities under federal and state law.

22. Upon being informed that the public place of accommodation has become fully and equally accessible, he will return within 45 days as a "tester" for the purpose of confirming their accessibility. *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017).

23. As a result of his difficulty experienced because of the inaccessible condition of the facilities of the Business, Plaintiff was denied full and equal access to the Business and Property.

24. The Defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

25. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are

readily achievable to remove.  Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

26. Given the obvious and blatant violation alleged hereinabove, the Defendants are on notice that Plaintiff seeks to have all barriers related to his disability remedied. *See Doran v. 7-11,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

27. Without injunctive relief, Plaintiff will continue to be unable to fully access Defendants' facilities in violation of Plaintiff's rights under the ADA.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325)

28. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this First Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

29. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods, and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. *See* 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those

        services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b.    A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D".

c.    A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

30.    Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards § 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Here the failure to provide a level access aisle in the designated disabled parking space is a violation of the law and excess slope angle in the access pathway is a violation of law.

31.    A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

32.    Here, the failure to ensure that accessible facilities were available and ready to be used by Plaintiff is a violation of law.

33.    Given its location and options, Plaintiff will continue to desire to patronize the Business but he has been and will continue to be discriminated against

due to lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*

34. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this First Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

35. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendants are systematically violating the UCRA, Civil Code § 51 *et seq.*

36. Because Defendants violate Plaintiff's rights under the ADA, they also violated the UCRA and are liable for damages. (Civ. Code § 51(f), 52(a).) These violations are ongoing.

37. Plaintiff is informed and believes and thereon alleges that Defendants' actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendants have been previously put on actual or constructive notice that the Business is inaccessible to Plaintiff. Despite this knowledge, Defendants maintain its premises in an inaccessible form, and Defendants have failed to take actions to correct these barriers.

## PRAYER

**WHEREFORE, Plaintiff prays that this court award damages provide relief as follows:**

1. A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325), and UCRA, Civil Code § 51 *et seq.* with

respect to its operation of the Business and Property; Note: Plaintiff is not invoking section 55, *et seq*, of the California Civil Code and is not seeking injunctive relief under the Disable Persons Act (Cal. C.C. §54) at all.

    2.     An award of actual damages and statutory damages of not less than $4,000 per violation pursuant to § 52(a) of the California Civil Code;

    3.     An additional award of $4,000.00 as deterrence damages for each violation pursuant to *Johnson v. Guedoir,* 218 F. Supp. 3d 1096; 2016 U.S. Dist. LEXIS 150740 (USDC Cal, E.D. 2016);

    4.     For reasonable attorneys' fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205; California Civil Code § 52;

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully request a trial by jury on all appropriate issues raised in this First Amended Complaint.

Dated: April 9, 2020        **MANNING LAW, APC**

By: /s/ Joseph R. Manning Jr., Esq.
Joseph R. Manning Jr., Esq.
Attorney for Plaintiff

FIRST AMENDED COMPLAINT